IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AARON DAVID WALDON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-00412-JD |
| | ) |
| BRIAN MAUGHN, in his official | ) |
| capacity, CARRIE BLUMERT, in her | ) |
| official capacity, KEVIN CALVEY, in his | ) |
| official capacity, DAVID WAYNE | ) |
| PRATER, in his official capacity, KELLY | ) |
| ELIZABETH COLLINS, in her official | ) |
| capacity, HEATHER ELIZABETH | ) |
| COYLE, in her official capacity, | ) |
| ANTHONY QUINN COLEMAN, in his | ) |
| individual capacity, and P.D. TAYLOR, | ) |
| in his official capacity, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Before the Court is the Report and Recommendation ("R. & R.") [Doc. No. 16] of United States Magistrate Judge Gary M. Purcell, to whom this 42 U.S.C. § 1983 action was referred for initial proceedings in accordance with 28 U.S.C. § 636(b)(1)(B). Judge Purcell recommends that Plaintiff Aaron David Waldon's claims against Defendants David Prater,[1] Kelly Collins, Heather Coyle, and Anthony Coleman be dismissed without

---

[1] Since the filing of this lawsuit, Vicki Behenna was elected Oklahoma County District Attorney. Accordingly, under Federal Rule of Civil Procedure 25(d), Vicki Behenna is hereby substituted for David Wayne Prater. Following this Order, captions for all filings going forward should reflect this change.

prejudice based on the *Younger*[2] doctrine. Alternatively, Judge Purcell recommends that Mr. Waldon's claims against Defendant Coleman be dismissed with prejudice because Mr. Waldon cannot show that Coleman was acting under color of state law, and that Mr. Waldon's claims against Defendant Coyle be dismissed with prejudice based upon judicial immunity. Judge Purcell also recommends that Mr. Waldon's claims against Defendants Brian Maughn, Carrie Blumert, Kevin Calvey, and P.D. Taylor[3] be dismissed without prejudice based upon Mr. Waldon's failure to allege these defendants' personal participation in the events and circumstances underlying his claims. Within the time limits authorized by the Court, Mr. Waldon filed objections to the R. & R. [Doc. No. 22]. Accordingly, the Court must make a de novo determination of any portion of the R. & R. to which a specific objection is made, and may accept, modify, or reject the recommended decision in whole or in part. 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3).

Upon de novo review of the issues presented, the Court accepts and adopts the R. & R., as modified herein. However, subsequent developments since the R. & R. was issued reveal that Mr. Waldon's state criminal proceeding has ended; thus, the Court holds that this case is not the type that warrants abstention under *Younger*. Given those

---

[2] *Younger v. Harris*, 401 U.S. 37 (1971).

[3] Since the filing of this lawsuit, Myles Davidson was elected Oklahoma County Commissioner for District 3 and Tommie Johnson III assumed the office of Oklahoma County Sheriff. Accordingly, under Federal Rule of Civil Procedure 25(d), Myles Davidson is hereby substituted for Kevin Calvey and Tommie Johnson III is hereby substituted for P.D. Taylor. Following this Order, captions for all filings going forward should reflect this change.

developments, the Court re-refers this matter to the magistrate judge for further screening of Mr. Waldon's claims against Defendants Prater and Collins only, as they are the only claims that survive. As for those claims dismissed without prejudice involving Defendants Maughn, Blumert, Calvey, P.D. Taylor, and Coleman the Court sua sponte grants Mr. Waldon leave to amend his complaint within 30 days of the entry of this Order.

I.     **BACKGROUND**

Mr. Waldon,[4] a state prisoner proceeding without counsel, filed this action under 42 U.S.C. § 1983, seeking monetary relief for alleged violations of his constitutional rights in connection with his state criminal prosecution and pretrial detention at the Oklahoma County Detention Center. He also seeks "immediate release from custody" by reinstatement of his previous bond.[5] Compl. at 15.[6] Mr. Waldon asserts claims against eight defendants—Oklahoma County Commissioners Brian Maughn, Carrie Blumert, and Kevin Calvey; Oklahoma County District Attorney David Prater; Oklahoma County

---

[4] At the time this action was initiated, Mr. Waldon was a pretrial detainee at the Oklahoma County Detention Center. *See* Compl. [Doc. No. 1] at 1.

[5] Tenth Circuit precedent is clear that a prisoner who challenges "the fact or duration of his confinement and seeks immediate release . . . must do so through an application for habeas corpus." *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (citing *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997)). "In contrast, a civil rights action . . . attacks the conditions of the prisoner's confinement and requests monetary compensation for such conditions." *McIntosh*, 115 F.3d at 812 (citations omitted). Here, it appears that Mr. Waldon is seeking dual relief. This issue was not addressed in the R. & R., but the Court flags the issue here for the magistrate judge to consider upon the re-referral involving claims against Prater and Collins.

[6] The Court uses ECF page numbering from the top of docket filings.

Assistant District Attorney Kelly Collins; Oklahoma County District Judge Heather Coyle; and Oklahoma County Sheriff P.D. Taylor, all in their official capacities; and Mr. Waldon's former criminal defense attorney, Anthony Coleman, in his individual capacity. Mr. Waldon identifies four causes of action in his civil rights Complaint. Compl. at 11. First, Mr. Waldon alleges that Prater and Collins violated his right to due process and his Fourth Amendment right to be free from unreasonable searches and seizures because they allegedly directed an investigator from their office to illegally tow Mr. Waldon's vehicle and conduct a warrantless search and seizure of Mr. Waldon's vehicle and cell phone. Second, Mr. Waldon alleges that Judge Coyle violated his Eighth Amendment right to be free from excessive bail when she increased his bond from $25,000 to $300,000 based on hearsay evidence that Waldon was a flight risk. Third, Mr. Waldon alleges that his former attorney, Coleman, acted in concert with the prosecution in denying Waldon his right to effective assistance of counsel under the Sixth Amendment. Fourth, Mr. Waldon alleges claims against P.D. Taylor on the grounds that Waldon's requests to move cells were ignored or denied and that he suffered sexual harassment and extortion at the hands of his cellmate as a result.

  Pursuant to 28 U.S.C. § 636(b)(1)(B), this matter was referred to Judge Purcell by the undersigned for initial proceedings. [Doc. No. 5]. Upon screening the Complaint under 28 U.S.C. §§ 1915A and 1915(e)(2)(B), Judge Purcell issued the R. & R. now under review. Section 1915A requires the Court to dismiss the complaint, or any portion of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon

4

which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also id*. § 1915(e)(2)(B) (same).

## II. STANDARD OF REVIEW

Mr. Waldon is proceeding pro se; thus, the Court must construe his pleadings "liberally" and hold them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), and *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, the Court may not "assume the role of advocate for the pro se litigant." *Id*. If the Court can "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id*. Nonetheless, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Nor can the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).

"Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged, and it would be futile to give him an opportunity to amend." *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) (citation omitted). The Court applies the same standard of review for dismissals under § 1915(e)(2)(B)(ii) as dismissals under Federal Rule of Civil Procedure

5

12(b)(6) for failure to state a claim. *Id.* A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). With these standards in mind, the Court turns to its analysis of Mr. Waldon's claims.

## III.     ANALYSIS

### A.     The Court re-refers Mr. Waldon's claims against Defendants Prater and Collins to the magistrate judge for further screening.

In the R. & R., Judge Purcell concluded that Mr. Waldon's claims against Defendants Coyle, Prater, Collins, and Coleman should be dismissed for lack of jurisdiction based on the *Younger* doctrine. Specifically, after examining the Complaint and taking judicial notice of the docket and court records in Mr. Waldon's state criminal proceeding, Judge Purcell recommended that the Court abstain from hearing Mr. Waldon's claims against Coyle, Prater, Collins, and Coleman pursuant to *Younger v. Harris*, 401 U.S. 37 (1971) because Mr. Waldon's state criminal proceeding was ongoing. R. & R. at 6–9.

In *Younger*, the Supreme Court held that federal courts should not intervene in state criminal proceedings initiated before the federal suit where the state proceedings are (1) ongoing, (2) offer an adequate forum for the defendant's federal claims, and (3) implicate important state interests. *Younger*, 401 U.S. at 43–44; *Brown ex rel. Brown v.*

6

*Day*, 555 F.3d 882, 887 (10th Cir. 2009) (noting, however, that abstention is the exception, not the rule, and should be rarely invoked).

Thus, the Court must determine whether there is an ongoing state proceeding. Based on the Court's independent review of the state court proceedings,[7] Mr. Waldon was found guilty after a jury trial on April 28, 2021, and he was sentenced by Judge Coyle on September 7, 2021. He appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals ("OCCA") on September 7, 2021, and on December 8, 2022, the OCCA affirmed Mr. Waldon's conviction and sentence and issued a mandate. "Since subsequent developments reveal that there no longer appears to be an ongoing criminal proceeding for *Younger* abstention purposes, the Court holds this case is not the type that warrants abstention." *See*, *e.g.*, *Mills v. Bryant*, No. CIV-15-619-D, 2016 WL 1734102, at *1 (W.D. Okla. Apr. 29, 2016) (concluding the same where the OCCA affirmed the state district court's decision to deny post-conviction relief and issued a mandate the same day). Given those developments, the Court re-refers this matter to the magistrate judge for further screening of Mr. Waldon's claims against Defendants Prater and Collins only.

**B.     Mr. Coleman was not acting under color of state law, and the Court dismisses without prejudice Mr. Waldon's claims against Mr. Coleman.**

Judge Purcell reasoned that Mr. Waldon's claims against Defendant Coleman should be dismissed because Coleman, as privately retained criminal defense counsel,

---

[7] *See State of Oklahoma v. Aaron David Waldon*, Oklahoma County District Court Case No. CF-2018-3202 and *Aaron David Waldon v. State of Oklahoma*, Oklahoma Court of Criminal Appeals Case No. F-2021-930. The Court takes judicial notice of the docket reports for both cases on the Oklahoma State Courts Network, http://www.oscn.net.

was not acting under color of state law for purposes of § 1983. R. & R. at 9–11. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Neither public defenders performing their 'traditional functions as counsel to a defendant in a criminal proceeding' nor private attorneys act[s] under color of state law." *Ellibee v. Hazlett*, 122 F. App'x 932, 934 (10th Cir. 2004) (unpublished) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981)); *see also Barnard v. Young*, 720 F.2d 1188, 1189 (10th Cir. 1983) (concluding that an attorney does not become a state actor merely by employing a state authorized subpoena power).

In his objections, Mr. Waldon asserts that Defendant Coleman worked "in concert with the state by turning against his client and assisting the state." Obj. at 5. He further asserts that "Defendant Coleman was referred to [Waldon] by Defendant Prater, who is the state, per se, the District Attorney." *See id.* He makes similar allegations in his Complaint.

Specifically, Mr. Waldon alleges that Defendant Coleman acted under color of state law because his conduct is "regulated by the Oklahoma Rules of Professional Conduct, the Oklahoma Bar, and Statutes."[8] Compl. at 3. He alleges that Defendant Prater "advised [him] to retain Anthony Quinn Coleman, OBA No. 21494, as private

---

[8] *See Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1448 (10th Cir. 1995) (recognizing that the Supreme Court has established several important general principles in finding state action and that the existence of governmental regulations, standing alone, is not sufficient for state action in a § 1983 claim).

counsel," and Mr. Waldon did so. *See id.* at 5. Additionally, Mr. Waldon alleges that Defendant Coleman received a text message from an unknown number at 11:08 p.m. on December 3, 2019, in which the sender indicated that Defendant Coleman should call him if he did not want to get caught off guard in court the next day. *See id.* at 9. Defendant Coleman elected not to call the person because he did not know the sender's identity or the nature of the alleged information he would share, and he had several cases scheduled the next day in court, including a hearing in Mr. Waldon's case. *See id.* at 5, 9.

At the hearing, Defendant Collins advised Judge Coyle that her office had received a call from a "concerned citizen" stating that Mr. Waldon was a flight risk. *See id.* at 5. In Judge Coyle's chambers, along with Defendants Prater and Collins, Defendant Coleman responded to the text message asking the person to call him. *See id.* at 9. When the person called, Defendant Coleman placed him on speaker phone. *See id.* at 9–10. Judge Coyle then increased Mr. Waldon's bond from $25,000.00 to $300,000.00. *See id.* at 5.

On December 17, 2019, a hearing was held on Mr. Waldon's request for a bond reduction. *See id.* The "concerned citizen" caller was uncooperative and did not appear at the hearing. *Id.* Rather, an investigator for the Oklahoma County District Attorney's Office testified as to the recorded telephone calls from the concerned citizen. *Id.* A bondsman was present on Mr. Waldon's behalf and was prepared to post a bond up to $100,000.00; however, the court denied Mr. Waldon's request for a bond reduction. *Id.*

To the extent that Mr. Waldon is attempting to invoke the "joint participation" doctrine to assert a claim against Defendant Coleman and the state for a § 1983

9

conspiracy, even liberally construed, he has failed to state a sufficient claim. *See Barnard*, 720 F.2d at 1189 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982)). Under this doctrine, a private party may become a state actor if he "acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar*, 457 U.S. at 937. The focus is on "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Gallagher*, 49 F.3d at 1453. "In applying this test, some courts have adopted the requirements for establishing a conspiracy under Section 1983." *Id.* at 1454. One requirement of the joint action charge "is that both public and private actors share a common, unconstitutional goal." *Id.* (citation omitted).

To state a claim for conspiracy under § 1983, a plaintiff must show "at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021) (citation omitted). "[A] plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants. Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Id.* (citations omitted). Mr. Waldon does not allege that Defendants Prater, Collins, and Judge Coyle expressly agreed with Defendant Coleman to carry out a common goal of violating Mr. Waldon's Sixth Amendment right to effective counsel. Instead, he alleges that the Oklahoma County District Attorney's Office had independent evidence from a "concerned citizen" that they shared with Judge Coyle, and that Defendant Coleman had a text message from an unknown person advising him to call if

he did not want to get caught off guard in court the next day. These allegations by themselves do not support an inference of joint action.

Mr. Waldon does not allege that the "concerned citizen" and the person who sent the text message to Defendant Coleman were one in the same person, or that Defendants Prater, Collins, and Coleman expressly agreed to share this information with Judge Coyle to deprive Mr. Waldon of his constitutional right to effective representation. Mr. Waldon does not allege what, if any, information the unknown caller shared with Judge Coyle when he was placed on speaker phone by Defendant Coleman, nor does he allege that this person's information is what resulted in Judge Coyle raising his bond. Thus, while Mr. Waldon's allegations may imply there was an agreement between Defendants Prater, Collins, Coleman, and Judge Coyle, he alleges no specific facts to plausibly show any such agreement, or any concerted action, as required to state a claim for conspiracy. Accordingly, Mr. Waldon's claims against Defendant Coleman are dismissed without prejudice.

**C.     Mr. Waldon has not set forth any facts suggesting that Judge Coyle acted outside her judicial capacity, and Judge Coyle is immune from suit.**

Judge Purcell concluded that the claim against Judge Coyle should be dismissed because of judicial immunity. R. & R. at 11–13. In response, Mr. Waldon asserts that Judge Coyle "join[ed] the corruption in chambers and erroneously increase[ed] [his] bond 12 [times]" his original bond in violation of his Eighth Amendment rights. Obj. at 5. Even assuming the veracity of Mr. Waldon's allegations, judges have absolute judicial immunity for acts taken in their judicial capacity. *Stump v. Sparkman*, 435 U.S. 349, 355–

57 (1978). Judicial immunity is immunity from suit. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Thus, "judicial immunity is not overcome by allegations of bad faith or malice . . . ." *Id.* Rather, immunity is overcome in only two circumstances: "First, a judge is not immune from liability for . . . actions not taken in the judge's judicial capacity." *Id.* "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12. To this end, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump*, 435 U.S. at 356–57. "[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Id.* at 356.

      Here, Mr. Waldon has not set forth any facts suggesting Judge Coyle acted outside her judicial capacity. Nor does Mr. Waldon allege that Judge Coyle acted without any jurisdiction to do so. The Supreme Court in *Stump* made clear that "whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Id.* at 362. A judge's order increasing a defendant's bond is a function normally performed by a judge. *See*, *e.g.*, *Sawyer v. Gorman*, 317 F. App'x 725, 727–28 (10th Cir. 2008) (unpublished) (concluding that a judge's imposition of bail clearly implicated an action taken in the judge's judicial capacity, and as such, the judge was absolutely immune from the plaintiff's damages claim against him); *Edwards v. Hare*, 682 F. Supp. 1528, 1531 (D. Utah 1988) (concluding that "the setting of bail is a judicial act," and finding the judge was

"absolutely immune from damages under § 1983"). Thus, Mr. Waldon was dealing with Judge Coyle in her judicial capacity.

Accordingly, Mr. Waldon's Complaint fails to state a claim against Judge Coyle because she is entitled to absolute immunity from Waldon's suit under federal law based on her judicial actions. Mr. Waldon's claim against Judge Coyle is dismissed with prejudice.

**D.    Mr. Waldon has not set forth any facts to suggest that any Oklahoma County policy or custom was the moving force behind any constitutional deprivation by an Oklahoma County employee.**

Mr. Waldon has sued Defendants Maughn, Blumert, Calvey, and P.D. Taylor in their official capacities. "A defendant sued in his official capacity is a different 'legal personage' than one sued in his individual, or personal capacity." *Langford v. Grady Cnty. Det. Ctr.*, 670 F. Supp. 2d 1213, 1236 (W.D. Okla. 2009) (quoting *Karcher v. May*, 484 U.S. 72, 78 (1987)). "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," while official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citations omitted). To succeed on stating such official-capacity claims, Mr. Waldon must allege: (1) Oklahoma County employees "committed a constitutional violation"; and (2) an Oklahoma County "policy or custom was the moving force behind the constitutional deprivation." *Campbell v. City of Spencer*, 777 F.3d 1073, 1077 (10th Cir. 2014) (citations omitted); *see also Layton v. Bd. of Cnty. Comm'rs of Okla. Cnty.*, 512 F. App'x 861, 867–68 (10th Cir. 2013) (unpublished) (describing the standard for holding county

officials liable under § 1983). Mr. Waldon has not made any discernable allegations involving Oklahoma County's policies or customs. As such, the Court dismisses Mr. Waldon's claims against Defendants Maughn, Blumert, Calvey, and P.D. Taylor in their official capacities, without prejudice.[9]

## IV.   CONCLUSION

Upon de novo review of the issues presented, the Court accepts and adopts Judge Purcell's Report and Recommendation [Doc. No. 16] as modified herein. However, subsequent developments since the R. & R. was issued reveal that Mr. Waldon's state criminal proceeding has ended; thus, the Court holds that this case is not the type that warrants abstention under *Younger*.

Given those developments, the Court re-refers this matter to the magistrate judge for further screening of Mr. Waldon's claims against Defendants Prater and Collins only, as they are the only claims that survive. As noted above, following this Order, the new district attorney, Vicki Behenna, is substituted for Defendant Prater as this is an official capacity claim. Mr. Waldon's claims against Judge Coyle are DISMISSED WITH PREJUDICE, and Defendant Judge Heather Coyle's Motion to Dismiss [Doc. No. 25] is DENIED as moot. Mr. Waldon's claims against Defendants Maughn, Blumert, Calvey, P.D. Taylor, and Coleman are DISMISSED WITHOUT PREJUDICE. As for those claims dismissed without prejudice, the Court sua sponte grants Mr. Waldon leave to

---

[9] It appears that Judge Purcell analyzed Mr. Waldon's claims against these Defendants in their individual or personal capacities, rather than their official capacities. However, Mr. Waldon named them in their official capacities. *See* Compl. at 1–3. Regardless, the Court reaches the same result, which is dismissal without prejudice.

amend his complaint within **30 days** of the entry of this Order. As noted above, following this Order, Myles Davidson is substituted for Defendant Kevin Calvey, and Tommie Johnson III is substituted for P.D. Taylor.

IT IS SO ORDERED this 22nd day of March 2023.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE